**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| KIMBERLY G.,[1] <br><br> *Plaintiff,* <br><br> v. <br><br> FRANK BISIGNANO, Commissioner of Social Security,[2] <br><br> *Defendant.* | Civil Action No. 25-1234 (SLS) <br><br> Judge Sparkle L. Sooknanan |

## <u>MEMORANDUM OPINION</u>

Kimberly G. is a 60-year-old woman with physical and mental impairments related to breast cancer, degenerative joint disease, and post-traumatic stress disorder (PTSD). In this action, Ms. G. challenges the Social Security Administration's denial of her claim for disability insurance benefits. She contends that the administrative law judge (ALJ) who issued the decision did not accurately assess the ways in which her mental impairments and medication side effects limit her ability to work. Relatedly, she argues that the ALJ failed to properly evaluate her subjective complaints. The Court is sympathetic to Ms. G.'s situation and recognizes the impact that her health conditions have had on her life. Nonetheless, because the ALJ's decision is supported by

---

[1] The Court partially redacts the Plaintiff's name in accordance with the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum from Hon. Wm. Terrell Hodges, Chair, Comm. on Ct. Admin. & Case Mgmt. to Chief Judges of the U.S. Cts. of Appeals, Chief Judges of the U.S. Cts., Clerks of the U.S. Cts. of Appeals, and Clerks of the U.S. Dist. Cts. (May 1, 2018), *available at* https://perma.cc/75ZR-GLBP.

[2] The current Commissioner is substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

substantial evidence, the Court may not substitute its judgment for that of the ALJ. The Court thus grants the Commissioner's motion and affirms the ALJ's decision.

**BACKGROUND**

**A.    Statutory Background**

"The Social Security Act establishes a program for providing 'disability insurance benefits' to eligible individuals and 'supplemental security income to individuals who have attained age 65 or are blind or disabled.'" *Cunningham v. Colvin*, 46 F. Supp. 3d 26, 28 (D.D.C. 2014) (citing 42 U.S.C. §§ 423, 1381, 1381a). An individual is disabled if they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether an individual is "disabled and entitled to disability benefits," the Social Security Administration conducts a "five-step sequential analysis." *Richardson v. Bisignano*, No. 22-cv-2488, 2025 WL 2022791, at *1 (D.D.C. July 18, 2025) (citing 20 C.F.R. § 404.1520). At step one, a claimant must establish that she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). At step two, she must show that she has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). At step three, she must demonstrate that her impairment is equivalent to one of a specific list of impairments that are conclusively presumed to be disabilities. *Id.* § 404.1520(a)(4)(iii); *see* 20 C.F.R. pt. 404, subpt. P, app. 1 ("Listing of Impairments").

If the claimant's impairment is not listed, then "before step four, the ALJ assesses the claimant's residual functioning capacity ('RFC')." *Richardson*, 2025 WL 2022791, at *1 (citing 20 C.F.R. § 404.1520(e)). Put simply, an RFC is "what an individual can still do despite his or her limitations." *Katrina M. v. O'Malley*, 752 F. Supp. 3d 1, 5 (D.D.C. 2024) (quoting SSR 96-8p, 61

2

Fed. Reg. 34474, 34475 (July 2, 1996)). At step four, a claimant must show that because of her RFC, she cannot perform her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). If she does this, the burden then shifts to the Social Security Commissioner at step five to show that there is other work that the claimant could do in the national economy based on her RFC, "age, education, and work experience." *Id.* § 404.1520(a)(4)(v); *see also Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004). "The Commissioner typically offers such evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's RFC and vocational factors." *Richardson*, 2025 WL 2022791, at *2 (citing 20 C.F.R. § 404.1566(e)). "If the applicant prevails at each step, then [s]he is deemed disabled and qualifies for disability benefits." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)).

### B.    Factual and Procedural Background

Ms. G. is a sixty-year-old woman who resides in Washington, DC. Admin. Rec. (AR) 132, ECF No. 4.[3] She completed high school and about "two and a half years" of college but has no additional vocational training. AR 38. She has previously worked as a "nurse assistant" and as a "data entry clerk." AR 45.

Ms. G. initially filed an application for disability insurance benefits on October 3, 2022, alleging that she had become disabled on June 27, 2022, because of breast cancer and high blood pressure. AR 66–67, 132–33, 182. Ms. G. later amended her disability onset date to September 27, 2022, the date that she had her first breast-cancer surgery. AR 15, 39, 153. The agency initially denied her claim and her application for reconsideration. AR 15. Ms. G. requested a hearing, which was held on March 18, 2024. AR 15, 34–64. At that hearing, the ALJ heard testimony from Ms. G. and a vocational expert. AR 34–64.

---

[3] AR refers to the Administrative Record docketed as ECF Nos. 4 and 4-1 through 4-11.

On May 3, 2024, the ALJ issued a decision again denying Ms. G.'s claim, finding that she was not disabled under the Social Security Act. AR 12–25. The ALJ reached his conclusion after conducting the usual five-step sequential analysis.

At *step one*, he found that Ms. G. had "not engaged in substantial gainful activity since September 27, 2022." AR 17.

At *step two*, he determined that Ms. G. had "the following severe impairments: malignant neoplasm of breast with left upper extremity residual impacts, and right knee degenerative joint disease and osteoarthritis." *Id.* The ALJ found that these "medically determinable impairments significantly limit[ed] [Ms. G.'s] ability to perform basic work activities." *Id.* But he declined to find that Ms. G.'s "mental impairment of post-traumatic stress disorder" was similarly severe. AR 18. Instead, the ALJ found that Ms. G.'s PTSD did not "cause more than [a] minimal limitation" on her "ability to perform basic mental work activities and [was] therefore nonsevere." *Id*.

The ALJ based this finding on his consideration of the four broad "areas of mental functioning." *Id*. He found that Ms. G. had only "mild limitation" in (1) "understanding, remembering, or applying information"; (2) "concentrating, persisting, or maintaining pace"; and (3) "adapting or managing oneself"; and that she had "no limitation" in (4) "interacting with others." AR 18–19. The ALJ acknowledged that Ms. G. alleged having difficulty concentrating and completing tasks and reported "feeling exhausted, fatigued, and weak for days following her chemotherapy." *Id*. But he noted that she also reported that "on good days, she could handle her personal care, prepare meals, go for walks and to the gym, clean her home, do laundry, shop in stores and by mail, pay bills, follow instructions, and manage her finances, email account, and medical care." *Id*. She was able to "live alone and handle stress and changes in routine." AR 19. She "denied requiring reminders to go places." AR 18. She was "able to provide information about

her health, describe her prior work history, follow instructions from healthcare providers, comply with treatment, respond to questions appropriately, and demonstrate intact memory, thoughts, and cognitions." AR 18. And "objective evidence in the record" also showed that she had "appropriate grooming and hygiene, no problem getting along well with providers and staff, normal mood and affect, intact judgment and insight, and no problems with temper control." AR 19.

Having detailed Ms. G.'s physical and mental impairments, the ALJ determined at *step three* that none of those impairments were medically equivalent to one of the listed impairments that would make her presumptively disabled. *Id.* Accordingly, before advancing to *step four*, the ALJ assessed Ms. G.'s RFC and concluded that she could perform "sedentary work" subject to certain limitations regarding physical movement and environmental conditions.[4] AR 20. In reaching this conclusion, the ALJ detailed Ms. G.'s allegations regarding how the symptoms resulting from her impairments might limit her "work-related activities." *Id.* These included, for example, that she felt "exhausted, tired and weak following her biweekly chemotherapy treatment and injections"; that since completing treatment she had "constant body aches, joint pain, muscle weakness, slowed thinking and cognition"; and that the "lymphedema under her left armpit" prohibited "her from lifting and cause[d] pain with reaching overhead and out front with the left upper extremity." *Id.* The ALJ also noted Ms. G.'s testimony that she had difficulty "sleeping, remembering, concentrating, and completing tasks" and "could stand no more than 5-to-10 minutes, sit approximately 15-to-20 minutes" and "walk less than one-half block." AR 21.

---

[4] More specifically, the ALJ concluded that Ms. G could "perform sedentary work . . . except she c[ould] occasionally push, pull, use hand controls, and reach overhead with the left upper extremity. She c[ould] frequently reach in all other directions with the left upper extremity. She c[ould] occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She c[ould] never climb ladders, ropes, or scaffolds. She c[ould] have only occasional exposure to moving mechanical parts; unprotected heights; poor ventilation; concentrated odors, fumes, dusts, and gases; extreme cold and extreme heat; and vibration." AR 20.

While the ALJ acknowledged Ms. G.'s allegations regarding her symptoms, he found that her "statements concerning the intensity, persistence, and limiting effects of [those] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." AR 22. He noted that Ms. G. appeared to have generally recovered well from her breast cancer surgeries and subsequent chemotherapy treatment; that she admitted improvement in her left arm mobility following physical therapy; and that although she continued to suffer knee pain, it "did not prevent her from being active or doing things she needed to do." AR 21–22. The ALJ also found the medical opinions in the record that might have supported further limitations "unpersuasive." AR 23. In particular, he stated that Dr. Sunil Adige's finding that Ms. G. would be "off-task 25% of the workday" and absent "about 4 days a month" was unsupported by any "objective evidence," and that Ms. G.'s February 2024 oncology examination "showed normal attention, perception, cognition, and memory." AR 23.

Finally, at *step five*, the ALJ concluded that Ms. G.'s RFC enabled her to perform her past relevant "semi-skilled" work as a "Data Entry Clerk." AR 24–25. Adopting the testimony of the vocational expert from the administrative hearing, the ALJ found that Ms. G.'s RFC was sufficient to allow to her to meet the "physical and mental demands" of that past work. AR 25. Accordingly, he found that Ms. G. had not been disabled, as defined by the Social Security Act, from September 27, 2022, through the date of his decision. *Id.*

Ms. G. appealed the ALJ's decision to the Social Security Administration's Appeals Council, which denied her request for review. AR 1. On April 22, 2025, Ms. G. filed a Complaint in this Court against the Commissioner of Social Security. Compl., ECF No. 1. She alleges that the decision denying her disability benefits was not based on substantial evidence and requests that this Court reverse that decision and award her benefits or remand this case to the agency for a

"new and complete hearing." Compl. at 2. On September 14, 2025, Ms. G. filed a Motion for Judgment of Reversal. ECF No. 6. In response, the Commissioner filed an Opposition and Motion for Judgment of Affirmance. ECF No. 8. Both motions are fully briefed and ripe for review. Pl.'s Opp'n Def.'s Mot. J. Affirmance & Reply Supp. Pl.'s Mot. J. Affirmance, ECF No. 14.

## LEGAL STANDARD

Under the Social Security Act, 42 U.S.C. § 405(g), district courts are empowered to review decisions by the Social Security Administration, but not to "substitute their judgment" for that of the agency. *Banks v. Astrue*, 537 F. Supp. 2d 75, 77 (D.D.C. 2008). "A district court sits in what is essentially an appellate role when it reviews the Commissioner's disability determination, which must be upheld 'if it is supported by substantial evidence and is not tainted by an error of law.'" *Grant v. Kijakazi*, 619 F. Supp. 3d 128, 135 (D.D.C. 2022) (quoting *Smith v. Bowen*, 826 F.2d 1120, 1121 (D.C. Cir. 1987)). "Substantial evidence . . . is 'more than a mere scintilla'"; "[i]t means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The plaintiff bears the burden of demonstrating that the Commissioner's decision [was] not based on substantial evidence or that incorrect legal standards were applied." *Cunningham*, 46 F. Supp. 3d at 33 (alteration in original) (quoting *Muldrow v. Astrue*, No. 11-cv-1385, 2012 WL 2877697, at *6 (D.D.C. July 11, 2012)).

## DISCUSSION

Ms. G. challenges the ALJ's decision in two ways. First, she argues that the ALJ failed to adequately account for the limitations caused by her mental impairments and medication side effects in determining her RFC. Mot. J. Reversal 5–11. Second, she asserts that the ALJ failed to properly evaluate her subjective complaints about the limiting nature of her symptoms. *Id.* at 11–13. These challenges are related, as Ms. G.'s subjective complaints about her symptoms are

part of the evidence on which the ALJ's RFC determination must be based. Ultimately, the Court concludes that the ALJ's decision was supported by substantial evidence on both fronts and must be affirmed.

### A.    The RFC Assessment

An RFC assessment evaluates "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 61 Fed. Reg. at 34475. "In effect, it is a 'function-by-function' inquiry based on all of the relevant evidence of a claimant's ability to do work." *Butler*, 353 F.3d at 1000 (quoting SSR 96-8p, 61 Fed. Reg. at 34476). The relevant evidence to be considered "includes medical records and source opinions, as well as the individual's subjective complaints about her condition." *Katrina M.*, 752 F. Supp. 3d at 10 (citing 20 C.F.R. § 416.929(c)(1)).

In determining a claimant's RFC, an ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 61 Fed. Reg. at 34477. "If the ALJ determines that the claimant has at least one severe impairment or combination of impairments, the ALJ must consider how the claimant's severe *and non-severe impairments* impact a claimant's physical and mental capacities while working." *Katrina M.*, 752 F. Supp. 3d at 11. The ALJ's assessment of functional limitations must also consider how an individual's function may be affected by factors that include "medication[] and other treatment," as well as any associated "side effects." *Lomax v. Comm'r of Soc. Sec.*, No. 20-cv-55, 2021 WL 3508087, at *6 (D.D.C. Aug. 4, 2021) (emphasis omitted) (quoting 20 C.F.R. § 404.1520a(c)(1)), *report and recommendation adopted*, 2021 WL 3722730 (D.D.C. Aug. 23, 2021).

To determine the extent to which an individual's symptoms limit her ability to perform basic work activities, the ALJ must complete a "two-step process." *Butler*, 353 F.3d at 1004. First, the "claimant must adduce 'medical signs or laboratory' findings evidencing a 'medically determinable impairment that could reasonably be expected to produce'" the alleged symptoms. *Id.* (quoting 20 C.F.R. §§ 404.1529(a)–(b), 416.929(a)–(b)). "Once the claimant crosses this threshold, the second step assesses the persistence and intensity of the claimant's [symptoms] as well as the extent to which [they] impair her ability to work." *Id.* (citing 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1)). In so doing, the ALJ must consider "the entire case record" and may not disregard an "individual's statements about the intensity, persistence, and limiting effects of [their] symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual." SSR 16-3p, 81 Fed. Reg. 14166, 14168–99 (Mar. 16, 2016). Instead, the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at 14171.

Ultimately, the ALJ's RFC assessment must provide a "narrative discussion" that identifies the evidence supporting each of the ALJ's conclusions. *Butler*, 353 F.3d at 1000 (quoting SSR 96-8p, 61 Fed. Reg. at 34478). Many courts have described this process as building a "logical bridge" between the evidence and the conclusions reached. *See, e.g.*, *Williams v. Colvin*, 134 F. Supp. 3d 358, 364 (D.D.C. 2015). In crossing this bridge, so to speak, the reviewing court "should be able to determine which evidence was credited and whether other evidence was rejected rather than simply ignored." *Cheryl S. v. Kijakazi*, No. 18-cv-1379, 2022 WL 21758804, at *10 (D.D.C.

May 4, 2022) (cleaned up), *report and recommendation adopted,* 2022 WL 21758803 (D.D.C. May 20, 2022).

### B.    The ALJ's Decision

Ms. G. contends that the ALJ did not adequately explain how he factored her non-severe mental impairments, her medication side effects, and her subjective complaints about her symptoms, into his RFC determination. The Court disagrees.

The ALJ's opinion acknowledged and reviewed the evidence in the record suggesting that Ms. G.'s non-severe mental impairments and medication side effects may have affected her ability to perform work-related activities. He noted, for example, that Ms. G. alleged "feeling exhausted, fatigued, and weak for days following her chemotherapy treatment," AR 19; "having constant body aches, joint pain, muscle weakness, slowed thinking and cognition," AR 20; and "having difficulty . . . remembering, concentrating, and completing tasks," AR 21. The ALJ also recounted the opinions and observations by Ms. G.'s doctors and her daughter about the ways in which Ms. G.'s symptoms affected her functioning. He discussed Dr. Adige's opinion that Ms. G. was "unable to concentrate," AR 23; and Ms. G.'s daughter's observations that Ms. G. "had difficulty . . . understanding, remembering, and completing tasks," AR 24.

In addition to cataloging the evidence supporting Ms. G.'s claims about the severity of her symptoms, the ALJ explained why he did not find that evidence persuasive. Most importantly, he noted that the opinions of Ms. G.'s doctors and her daughter about the severity of her symptoms were not supported by objective evidence. AR 23–24. And he identified the specific objective evidence that supported his conclusion. In reviewing Ms. G.'s mental functioning, he noted that she reported being able "to handle her personal care, perform household tasks, manage her medications, prepare meals, shop in stores and by mail, count change, read, watch movies, [and]

follow instructions." AR 18. She could "go for walks and to the gym . . . socialize in-person and by phone, follow oral instructions, travel . . . , and attend events and appointments." *Id*. She had "good rapport with [medical] providers, was described as pleasant and cooperative . . . and appeared comfortable during appointments." *Id*. She was able to "hold telephone conversations . . . and manage her finances, email account, and medical care." AR 19. She could "maintain appropriate alertness, attention, and concentration, relate during examinations, recall information, and complete simple tasks." *Id*. And finally, she had "appropriate grooming and hygiene, . . . normal mood and affect, intact judgment and insight, and no problems with temper control." *Id*.

It is true that the ALJ did not explicitly mention each of the above pieces of evidence when he detailed his conclusions regarding Ms. G.'s RFC at step 4. But his reasoning is not difficult to discern. When the ALJ noted, while conducting the RFC assessment, that the statements of Ms. G.'s doctors and daughter about the severity of her symptoms were inconsistent with or unsupported by objective evidence, there is no mystery as to what objective evidence the ALJ was referring to as he had previously discussed it at length. And in some places, he did draw explicit connections. In discounting Dr. Adige's opinion that Ms. G. was "unable to concentrate," for example, he noted that her "February 2024 oncology examination showed normal attention, perception, cognition, and memory." AR 23.

To be sure, the ALJ could have provided even more explanation. The record in this case, as in almost every social security appeal, is substantial. And there are certainly pieces of record evidence that the ALJ did not specifically discuss or explain away with perfect clarity.[5] But that is

---

[5] As Ms. G. points out, the ALJ did not expressly circle back to address the caveat in his assessment of Ms. G.'s mental functioning that she could handle various tasks independently "on good days." Pl.'s Opp'n Def.'s Mot. J. Affirmance & Reply Supp. Pl.'s Mot. J. Affirmance 6; AR 19. Further explanation on this point may have been helpful. Even so, the ALJ's decision sufficiently allows

not what the law requires. While the ALJ "must at least minimally discuss a claimant's evidence that contradicts [his] position," he need not "articulate his reasons for rejecting every piece of evidence." *See Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 67 (D.D.C. 2006) (quoting *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000))). Here, the ALJ has satisfied that standard. His decision demonstrates that he considered the potential impacts of Ms. G.'s severe and non-severe impairments on her ability to work. *See Katrina M.*, 752 F. Supp. 3d at 11. It builds a logical bridge between the evidence on which he relies and the conclusion that he ultimately reaches. *See Williams*, 134 F. Supp. 3d at 364. And it sufficiently enables the Court to "discern how evidence was analyzed and how much weight it received." *Cheryl S.*, 2022 WL 21758804, at *5 (quoting *McLaurin v. Colvin*, 121 F. Supp. 3d 134, 139 (D.D.C. 2015)).

The same is true for the ALJ's treatment of Ms. G.'s subjective complaints. The ALJ concluded that "[t]o the extent that [Ms. G.'s] allegations [were] inconsistent with [his RFC] assessment, those allegations [were] not accepted as alleged." AR 24. In support of that conclusion, he stated that while Ms. G.'s "medically determinable impairments could reasonably be expected to cause [her] alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record *for the reasons explained in* [*his*] *decision*." AR 22 (emphasis added). At first blush, this single statement viewed in isolation might appear to be the type of conclusory explanation that SSR 16-3p forbids. But the final clause incorporating the reasons explained elsewhere in the ALJ's decision is critical as those reasons were not conclusory. As discussed

---

the Court to discern why he did not find this caveat material. His review of the other objective evidence regarding Ms. G.'s functioning indicates that he did not believe that Ms. G.'s "bad days"—when she might require more frequent breaks—would be so frequent or so severe as to meaningfully impact her RFC.

12

above, the ALJ's decision provides a detailed review of Ms. G.'s allegations regarding the severity of her symptoms and of the evidence that is inconsistent with those allegations.

At bottom, the Court can "understand the ALJ's route to his conclusions from [his] ruling in its current form." *See Lane-Rauth*, 437 F. Supp. 2d at 68. Further, that conclusion was supported by "more than a mere scintilla" of evidence. *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229). The ALJ concluded that Ms. G.'s mental impairments were not sufficiently severe to merit modification of her RFC. He based that conclusion on the kinds of activities that Ms. G. herself explained she could do independently, as well as on her behavior in medical appointments. While another factfinder presented with the same evidence may have reasonably taken a different route to a different conclusion, that is not the touchstone for this Court's review. The Court's role is not to substitute its judgment for that of the ALJ. *Banks*, 537 F. Supp. 2d at 77. It is to ensure that the ALJ's decision is supported by substantial evidence—*i.e.*, that the decision identifies "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103 (quoting *Consol. Edison Co.*, 305 U.S. at 229). Here, the ALJ's decision has cleared that bar and thus must be affirmed.

## CONCLUSION

For all these reasons, the Court denies Ms. G.'s Motion for Judgment of Reversal, ECF No. 6, and grants the Commissioner's Motion for Judgment of Affirmance, ECF No. 8.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   April 24, 2026

13